Kathryn A. Stebner, State Bar No. 121088
Brian S. Umpierre, State Bar No. 236399
**STEBNER GERTLER & GUADAGNI**
A Professional Law Corporation
870 Market Street, Suite 1285
San Francisco, CA  94102
Tel:  (415) 362-9800
Fax:  (415) 362-9801
Email: kathryn@sgg-lawfirm.com
Email: brian@sgg-lawfirm.com

Guy B. Wallace, State Bar No. 176151
Jennifer U. Bybee, State Bar No. 302212
**SCHNEIDER WALLACE COTTRELL KONECKY, LLP**
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Tel: (415) 421-7100
Fax: (415) 421-7105
Email: gwallace@schneiderwallace.com
Email: jbybee@schneiderwallace.com

*Attorneys for Plaintiff and the Settlement Class*

# UNITED STATE DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Joseph DeCarlo; on his own behalf, and on behalf of others similarly situated,<br><br>               Plaintiff,<br><br>vs.<br><br>Watermark Retirement Communities, LLC; and Does 1 - 100,<br><br>               Defendants. | CASE NO. 2:23-cv-01659-DSF-RAO<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD**<br><br>Date:  July 21, 2025<br>Time:  1:30 p.m.<br>Ctrm.: 7D<br><br>Judge:  Honorable Dale S. Fischer<br>Magistrate:  Rozella A. Oliver |

1

## **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 6

I.      INTRODUCTION ........................................................................................... 6

II.     BACKGROUND ............................................................................................ 8

        A.      Claims Asserted and Parties ............................................................. 8

        B.      Case Proceedings and Informal Settlement Negotiations .......................... 8

        C.      Formal Mediation ............................................................................ 10

        D.      Preliminary Settlement Approval .................................................... 10

        E.      Settlement Class Notice ................................................................. 11

III.    SETTLEMENT PROVIDES SUBSTANTIAL BENEFITS ............................. 11

        A.      The Settlement Fund ....................................................................... 11

        B.      Stipulated Injunction ...................................................................... 13

IV.     CLASS COUNSEL'S FEE REQUEST SHOULD BE APPROVED ................. 14

        A.      Legal Overview ............................................................................... 14

                1.      Lodestar Method Should Apply to This Request ........................... 14

                2.      Percentage-of-Recovery Considerations............................. 16

                3.      Class Counsel's Lodestar Is Reasonable ........................... 17

        B.      The Hourly Rates Used in Lodestar Calculation Are Reasonable ............ 18

        C.      The Settlement Will Provide Substantial Benefits.................................... 20

        D.      Percentage-of-Recovery Cross-Check ........................................... 21

V.      REIMBURSEMENT OF LITIGATION EXPENSES IS WARRANTED......... 23

VI.     THE SERVICES AWARD REQUESTS ARE APPROPRIATE ..................... 23

VII.    CONCLUSION................................................................................................ 24

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Camacho v. Bridgeport Fin., Inc.*
  523 F.3d 973 (9th Cir. 2008) ........................................................................ 19

*Chalmers v. City of Los Angeles*
  796 F.2d 1205 (9th Cir. 1986) ..................................................................... 19

*Chaudhry v. City of L.A.*
  751 F.3d 1096 (9th Cir. 2014) ..................................................................... 17

*Chen v. Western Digital Corp.*
  2021 WL 9720778 (C.D. Cal. Jan. 5, 2021) ............................................... 24

*Cicero v. DirectTV, Inc.*
  No. EDCV 07-1182, 2010 WL 2991486 (C.D. Cal. July 27, 2010) ...... 7, 21

*Cunningham v. Cnty. of Los Angeles*
  879 F.2d 481 (9th Cir. 1988) ....................................................................... 15

*Fair Housing of Marin v. Combs*
  285 F.3d 899 (9th Cir. 2002) ....................................................................... 18

*Garner v. State Farm Mut. Auto. Ins. Co.*
  No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. April 22, 2010) .......... 23

*Harris v. Marhoefer*
  24 F.3d 16 (9th Cir. 1994) ........................................................................... 23

*Heredia v. Sunrise Senior Living, Inc.*
  No. 8:18-cv-01974-JLS-JDE, 2024 WL 5416919 (C.D. Cal. Dec. 3, 2024) ... 9, 19, 22

*Hicks v. Toys "R" Us-Delaware, Inc.,* 2014 WL 4670896 ............................... 19

*Holt v. Kormann*
  No. SACV 11-01047 DOC (MLGx, 2012 WL 5829864 (C.D. Cal. 2012) .............. 18

*In re Bluetooth Headset Prods. Liab. Litig.*
  654 F.3d 935 (9th Cir. 2011) ......................................................................... 6

*In re Cobra Sexual Energy Sales*

No. 2:13-cv-05942-AB-Ex, 2021 WL ..................................................................... 15, 23

*In re Ferrero*

583 Fed.Appx. 665 (9th Cir. 2014) ........................................... 15, 16, 21, 22

*Lowery Rhapsody Int'l, Inc.*

75 F.4th 985 (9th Cir. 2023) ........................................................................ 6

*Moreno v. City of Sacramento*

534 F.3d 1106 (9th Cir. 2008) ................................................................. 17

*Negrette v. Fid. & Guar. Life Ins. Co.*

444 F.Supp.2d 998 (C.D. Cal. 2006) ....................................................... 15

*Sarabia v. Ricoh USA Inc.*

2023 WL 3432160 (C.D. Cal. May 1, 2023) ....................................... 19, 21

*Singer v. Becton Dickinson & Co.*

2009 WL 4809646 (S.D. Cal. Dec. 9, 2009) ........................................... 24

*Staton v. Boeing Co.*

327 F.3d. 938 (9th Cir. 2003) .................................................. 8, 16, 19, 23

*Stiner, et al. v. Brookdale Senior Living, Inc., et al.*

No. 4:17-cv-03962-HSG (LB) ............................................................. 9, 22

*Taylor v. Shutterfly, Inc.*

No. 5:18-cv- 00266-BLF, 2021 WL 5810294 (N.D. Cal. Dec. 7, 2021) .................. 16

*Vizcaino v. Microsoft Corp.*

290 F.3d 1043 (9th Cir. 2002) ............................................. 14, 16, 20, 21

**California Cases**

*Arace v. Medico Investments LLC*

48 Cal.App.5th 977 (2020) ...................................................................... 15

*Delaney v. Baker*

20 Cal.4th 23 (1999) ............................................................................... 23

*Ketchum v. Moses*

24 Cal.4th 1122 (2001) ........................................................................... 18

4

*Laffitte v. Robert Half Internat. Inc.*
   1 Cal.5th 480 (2016) ........................................................................14, 15

*Serrano III v. Priest*
   20 Cal.3d 25, 49 (1977) ..................................................................14, 18

**Statutes**

Cal. Bus. & Prof. Code § 17200 ................................................................8

Cal. Civ. Code § 1750 ...............................................................................8

Cal. Civil Code §1780(e) ..........................................................................15

Cal. W&I Code § 15657.5 .........................................................................15

Cal. Welf. & Inst. Code § 15610.30 ..........................................................8

Code Civ. Proc., § 1021.5 .........................................................................15

**Rules**

Rule of Civil Procedure 23(e) ...................................................................11

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

With this motion, Plaintiffs respectfully request Court approval for (a) attorneys' fees in the amount of $705,053; (b) litigation costs in the amount of $29,522.91; and a service award for the Named Plaintiff of $5,000. All three requests are supported under the facts and applicable law.

As explained below, Plaintiffs' attorneys' fees request for the successful prosecution of California consumer protection claims is properly evaluated under a lodestar analysis, with the percentage-of-recovery (monetary and non-monetary benefits to the class) considered as a cross-check (but not a limitation) on the fee award. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 944 (9th Cir. 2011). The key factor in the fee analysis is the "value that the settlement provided to the class, including the value of nonmonetary relief." *Lowery Rhapsody Int'l, Inc.*, 75 F.4th 985, 992 (9th Cir. 2023). Here, after arm's-length negotiations conducted over the course of eighteen months, Watermark has agreed to pay $3.5 million and stipulated to a Court-ordered Injunction that will provide further benefit to all current Watermark residents, including Settlement Class Members. Declaration of Brian S. Umpierre ISO Final Settlement Approval Motion ("Umpierre Decl."), Ex. A (Stipulation of Settlement ("SS")); Ex. B ("Injunction").

The $3.5 million monetary payment is consistent with the amounts paid in comparable class settlements in relation to class size and other factors. Umpierre Decl., ¶¶ 66-71. The projected net settlement amount (after Court-approved fees, service awards and administration costs) will result in per-class member payments that substantially exceed average payments in the comparable settlements. *Id.*, ¶ 67, Ex. C (Updated Comparable Settlements Summary). In the closest comparable settlement by way of monetary recovery ($6.4M), the class size was over 13,000 persons, nearly five times larger than the Settlement Class here. *Id.*

6

The Injunction substantially benefits all Watermark residents at a "Watermark Injunction" facility (including Settlement Class Members), with provisions that require – and allow monitoring to confirm – that facility staffing is sufficient to meet resident needs. *See* Umpierre Decl., Ex. B ("Injunction"). Other injunction terms, including Disclosure provisions requiring changes to Watermark's contractual and marketing representations will provide additional societal benefits, even if not easily monetized. *See id.,* ¶¶ 1-9.

Through June 13, 2025, Class Counsel have spent approximately eight hundred hours (787) litigating the case, which under market hourly rates results in over $705,053 in lodestar fees. Umpierre Decl., ¶ 77. The lodestar amount includes a conservative estimate for anticipated future work and, specifically, monitoring Watermark's compliance with the Injunction. Umpierre Decl., ¶ 86. Class Counsel also applied "billing judgment" reductions to reduce or omit duplicative and other time deemed unnecessary to the resolution of this case. *See id.,* ¶ 79. *See also* Declaration of Kathryn A. Stebner ("Stebner Decl."), ¶¶ 20-21; Declaration of Guy B. Wallace ("Wallace Decl."), ¶¶ 14-16; Declaration of David T. Marks ("Marks Decl."), ¶¶ 23-24.

The fee request also is warranted under a percentage-of-recovery cross-check, if the Court elects to conduct one. Plaintiffs' fee request of $705,053 represents 20% of the settlement benefits, which falls well within the range approved by courts. *Andrade-Heymsfield v. NextFoods, Inc.*, No. 3:21-cv-01446-BTM-MSB, 2024 WL 3871634, *7 (S.D. Cal. April 8, 2024) ("some [percentage of recovery] awards go up to 50%"); *Cicero v. DirectTV, Inc.*, No. EDCV 07-1182, 2010 WL 2991486, at **6-7 (C.D. Cal. July 27, 2010) (case survey shows fee awards ranging from 30-50%); *see also, Lowery*, 75 F.4th at 994 ("Except in extraordinary cases, a fee award should not exceed the value that the litigation provided to the class"). The substantial additional benefits under the Injunction support Plaintiff's request. *See Staton v. Boeing Co.*, 327 F.3d.

938, 974 (9th Cir. 2003).

Plaintiffs' request for reimbursement of advanced litigation expenses is likewise warranted. To date, Class Counsel have advanced $29,522.91 to cover only necessary and ordinary litigation expenses, including but not limited to the costs associated with mediation.

Finally, the request for a $5,000 service award to the Named Plaintiff is warranted. The Named Plaintiff was strongly committed to the prosecution of this lawsuit, devoting considerable time by participating in numerous conferences with Class Counsel on case development and status and settlement related matters. *See* ECF 28-3 (Declaration of Joseph DeCarlo ("DeCarlo Decl.")), ¶¶ 21-24.

## II.    BACKGROUND

### A.    Claims Asserted and Parties

This action was filed on March 6, 2023. Named Plaintiff Joseph DeCarlo asserted class claims on behalf of persons who resided in a Watermark California assisted living facility ("Watermark California Facility") since March 6, 2019. Plaintiff asserted claims for damages and injunctive relief under California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*, and Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and the Elder Financial Abuse statute, Cal. Welf. & Inst. Code § 15610.30. *See* ECF 21 (First Amended Complaint ("FAC")).

Watermark provides assisted living and memory care services for seniors and disabled persons throughout the United States, including California. The litigation class proposed in the FAC included residents from eighteen (18) Watermark California Facilities. *Id.*, ¶ 68. At present, Watermark operates seven (7) California assisted living facilities. The seven (7) assisted living facilities Watermark currently operates are subject to the stipulated Injunction, as defined therein.

### B.    Case Proceedings and Informal Settlement Negotiations

When Plaintiff filed this action in March 2023, two other class action cases raising similar claims and legal theories were being advanced in the matters of *Heredia v. Sunrise Senior Living, LLC, supra,* pending in the Central District of California, and *Stiner, et al. v. Brookdale Senior Living, Inc., et al.,* No. 4:17-cv-03962-HSG (LB), pending in the Northern District. Ultimately, the Ninth Circuit affirmed the district court's grant of class certification in *Heredia* and class certification of these particular claims was denied in *Stiner.*[1] Thus, in an effort to avoid unnecessarily burdening the Court's resources and in order to receive the benefit of the Ninth Circuit's view on the substantially similar class certification issues, the parties requested and the Court granted requests to continue the case schedule to permit informal discovery and for the parties to evaluate their respective positions and consider settlement. Umpierre Decl., ¶¶ 16-18.

To that end, Defendant produced to Plaintiff documentary information in the form of company policies and procedures relating to (i) caregiver staffing, (ii) scheduling and labor management; and (iii) facility budgets. Umpierre Decl., ¶¶ 11, 19. Defendant also produced the template for its resident assessment form, its care point calculator tool, and average task time(s) it takes Watermark staff to complete caregiving tasks. *Id.* It is Plaintiff's position that all three are critical pieces of information for determining whether Defendant's resident assessment system has the capacity to provide sufficient levels of caregiver staffing under Plaintiff's legal theory of the case. Plaintiff also contends that all three form the basis of Plaintiff's common proof showing that common issues of law and fact predominate.

Crucially, the parties also agreed to the production of a subset of resident

---

[1] The Ninth Circuit denied the *Stiner* plaintiffs' petition for review of the order denying their motion for class certification on May 31, 2023 (ECF 13-1, ¶ 12) and, on August 2, 2023, affirmed the *Heredia* court's order granting plaintiffs' motion for class certification. ECF 13-1, ¶ 14.

assessment and staffing (i.e., payroll) data from four facilities[2] for one-year periods to test the adequacy of Defendant's staffing levels. *Id.*, ¶ 20. With these data, Plaintiff was able to calculate any delta between the staffing required to deliver assessed care services ("workload") and actual staffing as reflected in Watermark's payroll data. *Id.,* ¶ 24. In July 2024, Plaintiff provided Defendant with his preliminary staffing analysis which Plaintiff contends indicated a staffing shortfall between the hours required to deliver assessed care services ("workload") and the actual labor hours available at two facilities. Plaintiff worked to refine the analysis while the parties continued to negotiate a possible resolution in advance of an autumn 2024 mediation. *Id.*, ¶ 25.

### C.    Formal Mediation

On September 30, 2024, Plaintiff provided Watermark with draft proposed terms of injunctive relief that call for the disclosure regarding Watermark's staffing policies and procedures and provisions regarding Watermark's compliance with applicable regulations requiring staffing levels sufficient to provide residents with the services sufficient to meet their assessed needs. *Id.,* ¶ 26.

On October 15, 2024, the parties participated in a day's-long mediation session with the Honorable Judge Gandhi in Los Angeles and reached agreement in principle to settle this matter. *Id.,* ¶ 27. Shortly thereafter, the parties informed the Court of the settlement in principle and requested a continuance of the case schedule to permit the parties to finalize the agreement and document its terms. On December 23, 2024, the Court adopted the parties' requested schedule for the filing of Plaintiff's motion for preliminary approval of class action settlement. *Id.,* ¶ 28.

### D.    Preliminary Settlement Approval

Plaintiff's motion for preliminary approval of class action settlement came

---

[2] The four facilities are The Watermark at Westwood Village and three facilities randomly selected by the parties. Umpierre Decl., ¶ 12, n.1.

Case 2:23-cv-01659-DSF-RAO    Document 36    Filed 06/16/25    Page 11 of 24    Page ID
#:946

for hearing on March 17, 2025. During the hearing, the Court ordered that counsel provide a revised, redlined proposed order granting the motion for preliminary approval. The Court further directed that the revised order include appropriate time frames and dates regarding notice and further settlement approval proceedings. Umpierre Decl., ¶ 31. Plaintiff submitted a revised, proposed form of order and supporting declaration on March 18, 2025. *Id.* By order dated March 19, 2025, the Court granted Plaintiff's motion for preliminary approval of class action settlement after considering the relevant factors under the Rule of Civil Procedure 23(e) "fair, reasonable, and adequate" test and conditionally certified the proposed Settlement Class for settlement purposed only. ECF 33, ¶¶ 2-3.

### E.    Settlement Class Notice

On May 1, 2025, the Settlement Administrator (CPT Group) substantially completed dissemination of the Settlement Class Notice to approximately 2,600 Class Members. Declaration of Jennifer Forst ("Forst Decl."), ¶ 4; Umpierre Decl., ¶ 96. Additional notices were sent on May 7, 2025 to approximately twenty-four Settlement Class Members identified by Watermark after Watermark's initial provision of the class list to the Settlement Administrator. Forst Decl., ¶ 5. The total number of Settlement Class Members to whom notice was sent is 2,664. Forst Decl., ¶¶ 6-7. With a Class Notice Date of May 1, 2025 (Forst Decl., Ex. A; Umpierre Decl., ¶ 97), the optout/objection deadline is July 7, 2025. ECF 33 (Preliminary Approval Order), ¶¶ 12, 21.

## III.    SETTLEMENT PROVIDES SUBSTANTIAL BENEFITS

### A.    The Settlement Fund

Watermark has agreed to pay $3.5 million into a Settlement Fund to resolve all monetary obligations owed under the settlement. The $3.5 million cash payment is consistent with the amounts paid in comparable class settlements in relation to class size and other factors. Umpierre Decl., ¶¶ 66-71. In the closest comparable settlement

11

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD

by way of monetary recovery ($6.4M), the class size was over 13,000 persons, nearly five times larger than the Settlement Class here. *Id.,* ¶ 67. Assuming a Net Settlement Fund of approximately $2.67 million, the initial average settlement amount paid to Settlement Class Members will easily exceed amounts paid in other settlements.[3] With a confirmed count of 2,664 Settlement Class Members,[4] the average projected amount of initial payments is approximately $1,002, (Umpierre Decl., ¶¶ 40, 68), which is well in excess of the average initial payment amounts in comparable assisted living settlements. *Id.*, ¶ 68, Ex. C (Updated Comparative Settlements Summary Chart) (average initial settlement payments in other settlements ranged from $291 to $904, with an aggregate average payment of about $764 per class member).

At the preliminary approval stage, Class Counsel estimated the initial average per-Class Member payment would be $1,170. That estimate was based on Watermark's estimate that the Settlement Class size would be 2200 residents. ECF 28-1 at 6; ECF 28-2 (Umpierre Decl.), ¶ 13. Having conducted the actual file review to provide the Settlement Class Member list, Watermark identified 2,664 Settlement Class Members. Umpierre Decl., ¶ 40; Forst Decl., ¶¶ 4-5, 7. While the additional Class Members reduces the average initial payment, the revised average payment of $1,002 is within the range of the prior estimate.

Further, in comparable settlements, 30% or more of the initial settlement

---

[3] The estimated Net Settlement Fund of $2.65 million is based on $3.5 million gross payment, less amounts for CPT's administration costs ($75,000), the late claims reserve ($25,000) service award ($5,000), attorneys' fees ($705,053) and litigation expenses ($29,522.91). Umpierre Decl., ¶ 35, Ex. C (Updated Comparative Settlements Summary Chart). If the Court awards less than the requested amounts, all non-awarded funds go to the Settlement Class. SS, ¶¶9.3, 9.4. No portion of the Settlement Fund reverts to Watermark. SS, ¶7.9.

[4] CPT Group reports that, as of June 13, 2025, six (6) Settlement Class Members (out of 2,664) had opted-out of the Settlement, and none have objected. Forst Decl., ¶ 15. Prior to hearing on final settlement approval, Plaintiffs will provide an update on Settlement Class Member reactions, including objection/opt-out responses. *See Chen,* 2020 WL 13587954, at *13. *See also* Umpierre Decl., ¶ 97.

checks were not cashed, resulting in supplemental distributions to Settlement Class
Members (or their successors) who cashed their initial settlement checks. Umpierre
Decl., ¶ 71. Given that history, supplemental distributions are likely here. SS, ¶7.9
(authorizing Settlement Administrator to distribute uncashed checks through a
supplemental distribution).

### B.    Stipulated Injunction

The stipulated Injunction obligates Watermark to undertake and maintain
substantive actions that will improve facility staffing and benefit both Watermark
residents and consumers generally. The Injunction applies to the seven assisted living
facilities that Watermark presently operates in California ("Watermark Injunction
Communities"). The Injunction duration is 2.5 years (30 months). Injunction, ¶18.

Pursuant to the "Staffing Requirements" in the Injunction, Watermark is
required to determine and ensure that staffing hours are sufficient to perform the care
tasks called for under resident assessments. Further, the Injunction obligates
Watermark to comply with California staffing regulations, including 22 CCR §
87411(a), which requires that the number of facility staff be sufficient to meet resident
needs at all times. Injunction, ¶¶ 5-7.

Pursuant to the "Monitoring Requirements," Watermark must provide reports to
Class Counsel showing facilities' response times to resident requests for assistance
("Call Light Request/Response Data") on a quarterly basis. *Id.*, ¶¶ 9-12. As the call
light data shows how quickly Watermark responds to resident requests, it provides an
effective way to monitor whether facility staffing is sufficient to meet resident needs.
ECF 28-4 (Declaration of Cristina Flores in Support of Plaintiff's Motion for
Preliminary Approval of Class Settlement ("Flores Decl.")), ¶¶ 13, 15-16.

Pursuant to the "Training Requirements," Watermark is further required to
provide annual training to facility personnel on timely response to call light requests,
proper monitoring of resident care and how to appropriately staff its facilities.

13

Injunction, ¶ 8. Watermark also is required to maintain records of the content and attendance of such training. *Id.*

In combination, the Staffing, Monitoring and Reporting requirements of the Injunction provide substantive and verifiable means to address a critical issue raised in the lawsuit, namely, the sufficiency of facility staffing at Watermark facilities. *See* ECF 28-4 (Flores Decl.), ¶15. Additionally, under the Disclosure provisions in the Injunction, Watermark is required to include affirmative disclosures in its residency agreements explaining how resident assessments are used to set facility staffing. Watermark also is required to refrain from misleading statements as to how assessments impact facility staffing. Injunction, ¶¶ 1-4.

## IV.    CLASS COUNSEL'S FEE REQUEST SHOULD BE APPROVED

### A.    Legal Overview

#### 1.    Lodestar Method Should Apply to This Request

As the Ninth Circuit has held, where a settlement "produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth,* 654 F.3d at 942; *In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010). The same is true under California law. *Laffitte v. Robert Half Internat. Inc.*, 1 Cal.5th 480, 503-504 (2016).

Historically, lodestar has been the "primary method for establishing the amount of reasonable attorney fees" under California state law claims. *In re Vitamin Cases*, 110 Cal.App.4th 1041, 1052 (2003) (cleaned up); *Serrano III v. Priest*, 20 Cal.3d 25, 49 (1977) ("Serrano III").[5] The lodestar method is particularly appropriate in case asserting statutory claims that authorize "fee-shifting" to encourage

---

[5] Because Plaintiff asserts California statutory claims, state law governs the instant fee request. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). However, Ninth Circuit and California law are similar on the issues presented.

14

"socially beneficial" lawsuits. *In re Bluetooth*, 654 F.3d at 941; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir.1998). Also, courts have applied the lodestar method where a substantial portion of the settlement relief obtained is "not easily monetized." *In re Ferrero*, 583 Fed.Appx. 665, 668 (9th Cir. 2014).

Application of the lodestar method is warranted here. Plaintiff's CLRA claim is subject to a mandatory fee shifting provision, Cal. Civil Code §1780(e), enacted to "incentivize counsel" to protect consumers through "publicly beneficial litigation." *In re Cobra Sexual Energy Sales*, No. 2:13-cv-05942-AB-Ex , 2021 WL 4535790, *18 (C.D. Cal. April 7, 2021). The same is true for the Elder Financial Abuse claims. Cal. W&I Code § 15657.5; *Arace v. Medico Investments LLC*, 48 Cal.App.5th 977, 981-982 (2020) (attorneys' fees and other enhanced remedies in Elder Abuse Act intended to "encourage" statutory enforcement, citing *Negrette v. Fid. & Guar. Life Ins. Co.*, 444 F.Supp.2d 998, 1001 (C.D. Cal. 2006).[6]

In addition to the $3.5 monetary payment, the Injunction will provide meaningful benefits to Settlement Class Members currently residing at Watermark facilities, as well as non-Class residents and consumers who are considering a Watermark facility. The Injunction's Staffing, Training and Monitoring provisions alone will result in substantial benefits to Class Members and non-Class residents. *See* ECF 28-4 (Flores Decl.), ¶¶ 15-16. The Disclosure provisions in the Injunction provide additional important benefits to the general public. Injunction, ¶¶1-4.

Properly supported, the lodestar figure submitted by requesting counsel is "presumptively reasonable." *Cunningham v. Cnty. of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988). Courts can adjust lodestar fees "upward or downward" to ensure a reasonable fee, in consideration of factors such as the "quality of representation, the benefit obtained for the class, the complexity and novelty of the

---

[6] Plaintiff's UCL claim also supports recovery of attorneys' fees under the "private attorney general" doctrine. Code Civ. Proc., § 1021.5; *Laffitte*, 1 Cal.5th at 489.

issues presented, and the risk of nonpayment." *In re Bluetooth*, 654 F.3d at 941-942.

## 2.    Percentage-of-Recovery Considerations

Under the lodestar method, a cross-check under the "percentage-of-recovery" analysis is "encouraged," (*Lowery*, 75 F.4th at 988), but not "required." *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 547 (9th Cir. 2016) (where all classwide benefits are "not easily monetized, a cross-check is entirely discretionary"). Where the settlement includes non-monetary benefits not easy to quantify, courts have based fee awards "entirely on the lodestar." *Taylor v. Shutterfly, Inc.*, No. 5:18-cv-00266-BLF, 2021 WL 5810294, *9 (N.D. Cal. Dec. 7, 2021); *In re Ferrero*, 583 Fed.Appx. at 668.

Importantly, "recovery" under the percentage method includes both cash and the "value of nonmonetary relief." *Lowery*, 75 F.4th at 992. To count toward the overall recovery amount, the non-monetary provisions (such as injunctive relief) must "have actual value to the class." *In re Bluetooth*, 654 F.3d at 944.

If the monetary value of injunctive relief is "difficult to quantify" but the injunction nevertheless provides a "meaningful benefit to society," it is still considered in determining a reasonable fee. Under those circumstances, the injunctive relief supports a fee award that represents a higher percentage of the settlement fund. *Lowery*, 75 F.4th at 992, n.1; *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1055 (9th Cir. 2019); *Staton*, 327 F.3d at 974; *Vizcaino*, 290 F.3d at 1049. *Lowery* cites as examples civil rights actions and copyright cases that provide "meaningful" societal benefits. *Lowery*, 75 F.4th at 994-995. *In re Ferrero* affirmed fees awarded in a class settlement of CLRA, UCL, and warranty claims. *In re Ferrero Litigation*, 2012 WL 2802051, *1 (S.D. Cal. July 9, 2012).

The 25% "benchmark" percentage does not establish a hard cap on fees otherwise properly awarded. *Vizcaino*, 290 F.3d at 1048. Generally, awarded fees do not exceed 50% of the overall value of class settlement benefits. *See Lowery*, 75 F.4th

16

at 994 ("Except in extraordinary cases, a fee award should not exceed the value that the litigation provided to the class").

As detailed below, Plaintiffs' fee request passes muster under the percentage cross-check, if one is applied. The requested fee ($705,053) is 20% of the $3.5 million in monetary benefits to the class only. Umpierre Decl., ¶¶ 77, 86. And, the other meaningful public benefits provided under the Injunction (such as from the Disclosure provisions and the staffing, training, and monitoring benefits to non-Class Members) further support the reasonableness of a fee award in that amount.

### 3.    Class Counsel's Lodestar Is Reasonable

Through June 13, 2025, Class Counsel have collectively worked nearly 800 hours on this case and incurred total lodestar fees of $605,053. Umpierre Decl., ¶ 77. To account for the anticipated future work entailed in monitoring Watermark's compliance over the 2.5 year term of the Injunction, the request includes a conservative estimate of 100 hours of attorney-time. *Id*., ¶ 86. Class Counsel also applied "billing judgment" reductions to reduce or omit duplicative and other time deemed unnecessary to the resolution of this case. *Id.,* ¶ 79; Stebner Decl., ¶¶ 20-21; Wallace Decl., ¶¶ 14-16; Marks Decl., ¶¶ 23-24. In addition, Class Counsel have elected to use 2023 rates instead of current rates.  In their preliminary approval motion, Class Counsel estimated that their lodestar would be approximately $875,000.  Following the foregoing adjustments, however, Class Counsel only seek approximately $ 705,053. *Id.*

The lodestar calculation "begins with the multiplication of the number of hours reasonably expended by a reasonable hourly rate." *Hanlon*, 150 F.3d at 1029. With respect to the hours worked, courts consider whether "in light of the circumstances, the time could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). Generally, courts "defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Chaudhry v. City of L.A.*, 751 F.3d 1096, 1111 (9th Cir. 2014), cert.

17

denied, –U.S. –, 135 S.Ct. 295, 190 L.Ed.2d 141 (2014)(cleaned up); *Holt v. Kormann*, No. SACV 11-01047 DOC (MLGx, 2012 WL 5829864, *6 (C.D. Cal. 2012) (attorney's sworn testimony "is evidence of considerable weight" on the issue of the time required for particular task) (cleaned up).[7]

Here, Class Counsel have submitted detailed billing records describing the work performed on the case. Umpierre Decl., ¶¶ 78-81, Ex. D (Class Counsel Lodestar Spreadsheet). That includes time spent on case investigation and witness interviews, complaint preparation, engaging in informal discovery over the course of approximately eighteen (18) months and conducting a staffing analysis, an all-day mediation session, negotiating and documenting the Settlement Stipulation, Injunction, and Class Notice, and briefing and arguing for settlement approval.[8]

Importantly, the net lodestar hours reflect the exercise of "billing judgment" to address "any excessive, redundant, or unnecessary hours." *Fair Housing of Marin v. Combs,* 285 F.3d 899, 908 (9th Cir. 2002). Specifically, Class Counsel have discounted gross lodestar hours by eliminating potentially unnecessary, duplicative, or excessive time not necessary to the resolution of this matter. In addition, Class Counsel have elected to use 2023 rates instead of current rates.  In their preliminary approval motion, Class Counsel estimated that their lodestar would be approximately $875,000. Following the foregoing adjustments, however, Class Counsel only seek approximately $ 705,053. *See* Umpierre Decl., ¶ 79; Stebner Decl., ¶¶ 20-21; Wallace Decl., ¶¶ 14-16; Marks Decl., ¶¶ 23-24.

**B.    The Hourly Rates Used in Lodestar Calculation Are Reasonable**

Under the lodestar analysis, the hourly rates used in a fee request must be

---

[7] Under California law, fee awards should generally be "fully compensatory." *Ketchum v. Moses,* 24 Cal.4th 1122, 1133 (2001). Thus, "absent circumstances rendering the award unjust, an attorney fee award should ordinarily include compensation for all the hours reasonably spent." *Id.*; *Serrano III,* 20 Cal.3d at 49.
[8] See also, Declarations of Class Counsel, filed concurrently herewith.

18

"reasonable" given the "experience, skill and reputation of the attorney requesting
fees." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). The
requested rates must be "in line with those prevailing in the community for similar
services by lawyers of reasonable comparable skill, experience and reputation."
*Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (cleaned up);
*Sarabia v. Ricoh USA Inc.*, Case No. 8:20-cv-00218-JLS-KES, 2023 WL 3432160, *7
(C.D. Cal. May 1, 2023). Generally, the "forum district represents the relevant
legal community." *Sarabia*, *7.

Multiple courts (including this Court) have found the annual "Real Rate Report"
to be useful when assessing the reasonableness of rates in the Central District. *See, e.g.,*
*Hicks v. Toys "R" Us-Delaware, Inc.,* Case Nos. CV13-1302-DSF (JCGx), EDCV 13-
01159 DSF (JCGx), 2014 WL 4670896, at *1. Here, the hourly rates charged by Class
Counsel are within the Third Quartile rates set forth in the 2023 Real Rate Report
(2023 Report). Compare Umpierre Decl., Ex. D (Class Counsel Lodestar Spreadsheet,
Summary Tab, listing hourly rates); Umpierre Decl., Ex. E (2023 Real Rate Report),
pp. 16, 25, 29-30.[9]

The Third Quartile rates set forth in the 2023 Real Rate Report are an
appropriate guideline here. The rates Class Counsel seeks now compare favorably with
the rates listed in the 2023 Real Rate Report. These are the same rates that were
approved by Judge Staton in *Heredia v. Sunrise Senior Living, Inc.*, No. 8:18-cv-
01974-JLS-JDE, 2024 WL 5416919, at *9-10 (C.D. Cal. Dec. 3, 2024). *See* Umpierre
Decl., Ex. E.

Further, as reflected in their respective Declarations in Support of the Motions
for Final Settlement Approval and Attorneys' Fees, Costs, and Service Award filed

---

[9] Per the Real Rate Report team, the "Third Quartile" represents "attorneys whose
rates fall between the 50th and 75th percentiles. Attorneys in the Third Quartile
typically charge higher rates than those in the First Quartile but are below the top
25% of the rate distribution." Umpierre Decl., ¶ 90, Ex. F.

concurrently herewith, Class Counsel have literally decades of experience successfully prosecuting class actions involving understaffing claims asserted against assisted living and skilled nursing facilities. Stebner Decl., ¶¶ 3-6; Wallace Decl., ¶¶ 3-4; Marks Decl., ¶¶ 3-7. Historically, multiple courts have approved hourly rates for many of Class Counsel at levels commensurate with the rates requested here. Umpierre Decl., ¶ 92, Exs. G, H. During the course of this litigation, Class Counsel charged the same hourly rate(s) for all work performed on the case. *Id.,* Ex. D (Class Counsel Lodestar Spreadsheet).

### C.   The Settlement Will Provide Substantial Benefits

The key consideration in any fee request is whether the "value provided to the class, including the value of nonmonetary relief" justifies the fee award. *Lowery*, 75 F.4th at 993; *In re Bluetooth*, 654 F.3d at 943-45. Here, the $3.5 million monetary payment represents nearly 20% of the likely trial recovery and exceeds the average cash payments obtained in most comparable settlements. Umpierre Decl, ¶¶ 60, 67-69.

Further, the Staffing, Training, Monitoring, and Disclosure provisions in the Injunction result in added benefits for current Watermark residents (Class Members and non-Class Members alike) who reside in the Watermark Injunction facilities during the Injunction term. *See In re BlueTooth*, 654 F.3d at 942; *Vizcaino*, 290 F.3d at 1047-49.  First, non-Class residents at Watermark facilities rely on the same pool of care providers as current resident Class Members and, as such, will likewise obtain a benefit from the Staffing, Training, and Monitoring provisions in the Injunction. *See* ECF 28-4 (Flores Decl.), ¶ 13, 16. Second, the Disclosure provisions in the Injunction will benefit consumers, including prospective Watermark residents. Specifically, those provisions require disclosures (and preclude misstatements) with respect to how resident assessments are used to set facility staffing (Injunction, ¶¶1-4), and thus address a key allegation in the lawsuit. *See* ECF 28-4 (Flores Decl.), ¶15. Even if not easily monetized, the Disclosure provisions provide societal benefits properly

20

considered in determining an appropriate fee award here. *In re Ferrero*, 583 Fed.Appx. at 668 ("meaningful" injunction that is "consistent with the relief" sought in the lawsuit supports approval of fee award); *Lowery*, 75 F.4th at 992, n.1.

### D.     Percentage-of-Recovery Cross-Check

Plaintiffs' fee request of $705,053 represents 20% of the $3.5 million in monetary value provided to the Settlement Class. Umpierre Decl., ¶ 86. That falls well within the range approved in other cases. *In re Ferrero*, 583 Fed.Appx. at 668 (approving fee award of $985,920 where settlement benefits are $550,000 cash plus (non-monetized) injunctive relief requiring changes to product labels and advertising); *Andrade-Heymsfield*, 2024 WL 3871634, *7 ("some [percentage of recovery] awards go up to 50%"); *Cicero v. DirectTV, Inc*., No. EDCV 07-1182, 2010 WL 2991486, at **6-7 (C.D. Cal. July 27, 2010) (survey of class action "suggests that 50% is the upper limit, with 30-50% commonly awarded in cases in which the common fund is relatively small").

Under *Lowery*, if the requested fee "exceeds 25% of the benefit to the class," a "hard and probing look" is warranted to ensure the award is reasonable. *Lowery*, 75 F.4th at 994. Even though Plaintiffs do not seek fees in an amount greater than the 25% benchmark, the instant fee request passes muster under any level of scrutiny. Class Counsel's lodestar support is solid and reflects careful application of "billing judgment" to eliminate any excessive time. The hourly rates charged fall squarely within market (as confirmed by the Real Rate Report and other sources) and do not include a "delayed payment" adjustment. Further, Plaintiffs' fee request is reasonable after consideration of the results achieved, risk of litigation, skill required and quality of work, litigation burdens, and whether settlement produced non-cash benefits, such as injunctive relief. *Vizcaino*, 290 F.3d at 1048–50; *Sarabia*, 2023 WL 3432160, at *5.

With respect to "results achieved," the key question is the value provided to the class in terms of cash and nonmonetary relief. *Lowery*, 75 F.4th at 993; *In re*

21

*Bluetooth*, 654 F.3d at 943-45. Here, the $3.5 million cash is consistent with the monetary benefits in comparable settlements, (Umpierre Decl., ¶¶ 62-69), without considering the benefit to all residents, Settlement Class Members included, by virtue of the staffing, training, monitoring, and disclosure requirements set forth in the Injunction.

With respect to the risk factor, the case presented multiple challenges. For example, Plaintiff faced a risk showing classwide damages, particularly given Watermark's potential offset defense and other potential evidentiary complexities. As to class certification, Plaintiff believes his economic loss claims were suitable for class treatment, but not all jurists have agreed. *Compare Heredia v. Sunrise Senior Living, LLC,* Case No. 8:18-cv-01974-JLS-JDE, 2021 WL 6104188 (C.D. Cal. Nov. 16, 2021), affirmed 2023 WL 4930840 (9th Cir. 2023) with *Stiner v. Brookdale Senior Living, Inc.,* 665 F.Supp.3d 1150, 1208-1210 (N.D. Cal. 2023).

The successful prosecution of this case required skillful lawyering, particularly given Watermark's resources and choice of defense counsel. Watermark was represented by Jones Day, one of the most prestigious law firms in the county. *In re American Apparel, Inc. S'holder Litig.,* 2014 WL 10212865, at *22 (C.D. Cal. 2014) (court considers "quality of opposing counsel as a measure of the skill required to litigate the case successfully").

With respect to "non-cash" considerations, both Settlement Class Members and Non-Class residents will benefit from the Injunction provisions bolstering facility staffing, as they rely on the same pool of care providers. *See* ECF 28-4 (Flores Decl.), ¶ 13, 16. Further, the general consuming public will benefit from improved disclosures in Watermark's resident admission contract with respect to how resident assessments impact facility staffing levels. Injunction, ¶¶ 1-4. The "meaningful" injunctive relief resulting in a "considerable benefit to society" supports Plaintiffs' requested fee. *See Lowery,* 75 F.4th at 994-995; *In re Ferrero,* 583 Fed.Appx. at 668.

Class Counsel's fee request also accords with the Legislative intent under the CLRA and Elder Financial Abuse statutes to encourage meritorious lawsuits through the mandatory fee-shifting provisions. *In re Cobra Sexual Energy Sales,* 2021 WL 45355790, *18 (CLRA fee shifting designed to "incentivize counsel" to protect consumers through "publicly beneficial litigation); *Delaney v. Baker,* 20 Cal.4th 23, 33 (1999) (fee provision in elder abuse statute enacted to encourage "attorneys to take up the cause").

## V.    REIMBURSEMENT OF LITIGATION EXPENSES IS WARRANTED

Class Counsel are entitled to reimbursement of reasonable out-of-pocket costs and expenses advanced in investigating, prosecuting, and settling this case. Fed. R. Civ. P. 23(h); *Harris v. Marhoefer,* 24 F.3d 16, 19 (9th Cir. 1994) (approving reimbursement reasonable expenses that would "normally be charged to a fee paying client"); *Staton,* 327 F.3d at 974. As supported by the declarations of Class Counsel submitted herewith, the requested costs and expenses were reasonably necessary for the prosecution of the lawsuit.

## VI.    THE SERVICES AWARD REQUESTS ARE APPROPRIATE

In accord with the Settlement Stipulation, Named Plaintiff, respectfully, seeks a service award in the amount of $5,000. Settlement Stipulation. SS, ¶9.3; *see also* ECF 28-3 (DeCarlo Decl.), ¶ 31.

The requested award is warranted given the "strong commitment" to the Class shown here by the Named Plaintiff. *Garner v. State Farm Mut. Auto. Ins. Co.,* No. CV 08 1365 CW (EMC), 2010 WL 1687832, **18 & n.8 (N.D. Cal. April 22, 2010) (approving $20,000 service award; collecting cases). Specifically, Plaintiff devoted considerable time and effort throughout his service (over two years) in this litigation. Mr. DeCarlo and his son participated in numerous conferences with Class Counsel on case investigation, development, and status, and settlement related matters.

23

The amount the Named Plaintiff is requesting is relatively modest, and well within the range approved by other courts within the Ninth Circuit. *See, e.g., Chen v. Western Digital Corp.,* Case No. 8:19-cv-00909-JLS-DFM, 2021 WL 9720778, *18 (C.D. Cal. Jan. 5, 2021) (granting $18,000 service award); *Singer v. Becton Dickinson & Co.,* No. 08-CV-821-IEG (BLM), 2009 WL 4809646, at *6 (S.D. Cal. Dec. 9, 2009) (approving $25,000 service award); *Garner v. State Farm Mut. Auto. Ins. Co.,* No. CV 08 1365 CW (EMV), 2010 WL 1687832, at *17 (N.D. Cal. Apr. 22, 2010) (approving $20,000 service award).

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests: (a) attorneys' fees of $705,053; (b) reimbursement of $29,522.91 in litigation costs and expenses; and (c) a service award of $5,000 to the Named Plaintiff.

Dated: June 16, 2025

*/s/ Brian S. Umpierre*
Kathryn A. Stebner, State Bar No. 121088
Brian S. Umpierre, State Bar No. 236399
**STEBNER GERTLER & GUADAGNI**
870 Market Street, Suite 1285
San Francisco, CA 94102
Tel:    (415) 362-9800
Fax:    (415) 362-9801
Email:    kathryn@sggklaw.com
            brian@stebnerassociates.com

Guy B. Wallace, State Bar No. 176151
**SCHNEIDER WALLACE COTTRELL KONECKY, LLP**
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Tel:    (415) 421-7100
Fax:    (415) 421-7105
Email:    gwallace@schneiderwallace.com

Attorneys for Plaintiff and the Settlement Class