# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| Joseph DeCarlo; on his own behalf, and on behalf of others similarly situated, | CASE NO. 2:23-cv-01659-DSF-RAO |
|---|---|
| Plaintiff, | **ORDER GRANTING MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD** |
| vs. | |
| Watermark Retirement Communities, LLC; and Does 1 - 100, | |
| Defendants. | |

# INTRODUCTION

Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Award came on for hearing on July 21, 2025, at 1:30 p.m., in Courtroom 7D of the United States District Court for the Central District of California.

Plaintiffs moved the Court for an award of $705,053 in attorneys' fees, litigation expenses and costs of $29,523, and a service award in the amount of $5,000 to the Named Plaintiff.

Having considered the Plaintiffs' Motion, the supporting Declarations and exhibits, the relevant legal authority, the record in this case, and the statements of counsel, the Court finds as follows:[1]

## I. ATTORNEYS' FEES

As the underlying claims here are based on state law, the Court applies state law with respect to the fee request. *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002).

Under both California state law and Ninth Circuit precedent, where a settlement "produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method of the percentage-of-recovery method." *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 942 (9th Cir. 2011); *Laffitte v. Robert Half Int'l. Inc.,* 1 Cal.5th 480, 503-504 (2016).

Historically, lodestar has been the "primary method for establishing the amount of reasonable attorney fees' under California state law claims. *In re Vitamin Cases,* 110 Cal.App.4th 1041, 1052 (2003); *Serrano III v. Priest,* 20 Cal.3d 25, 49 (1977) ("*Serrano III*"). The lodestar method is particularly appropriate in cases asserting statutory claims that authorize "fee-shifting" to encourage "socially beneficial" lawsuits. *In re Bluetooth,* 654 F.3d at 941; *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1029 (9th Cir. 1998). Courts have also applied the lodestar method

---

[1] For purposes of this Order, the Court adopts and incorporates the terms and definitions set forth in the Stipulation of Settlement.

where a substantial portion of the settlement relief obtained is "not easily monetized." *In re Ferrero,* 583 Fed.Appx. 665, 668 (9th Cir. 2014).

Application of the lodestar method is warranted here. Plaintiffs' CLRA claims are subject to a mandatory fee-shifting provision, Cal. Civil Code § 1780(e), enacted to "incentivize counsel" to protect consumers through "publicly beneficial litigation." *In re Cobra Sexual Energy Sales,* Case No. 2:13-cv-05942-AB-Ex, 2021 WL 4535790, at *18 (C.D. Cal. Apr. 7, 2021). The same is true for the Elder Financial Abuse Claims. Cal. Welf. & Inst. Code § 15657.6; *Arace v. Medico Investments LLC,* 48 Cal.App.5th 977, 981-982 (2020) (attorneys' fees and other enhanced remedies in Elder Abuse Act intended to "encourage" statutory enforcement, citing *Negrette v. Fid. & Guar. Life Ins. Co.,* 444 F.Supp.2d 998, 1001 (C.D. Cal. 2006)).

Further, the settlement includes injunctive relief that benefits all Watermark residents, even if not easily monetized. Specifically, the stipulated Injunction includes Staffing, Training, and Monitoring provisions provide substantive and verifiable means to address the sufficiency of facility staffing. Additionally, the Injunction's Disclosure provisions require changes to Watermark's contractual and marketing representations that will provide additional societal benefits.

Courts awarding attorneys' fees under the lodestar method are "encouraged" to cross-check the requested fees under the "percentage-of-recovery" analysis. *Lowery v. Rhapsody Int'l, Inc.,* 75 F.4th 985, 988 (9th Cir. 2023). The "recovery" under the percentage method includes both cash and the "value of nonmonetary relief." *Id.,* at 992. In determining the appropriate fee award, courts "must expressly consider the value of the settlement provided to the class, including the value of nonmonetary relief." *Id. See also In re Bluetooth,* 654 F.3d at 943-945.

Percentage considerations, including the 25% benchmark, do not cap the amount of fees that can be awarded, if justified under the circumstances of the case. *Vizcaino,* 290 F.3d at 1048.

- 3 -

### A. Class Counsel's Lodestar

The lodestar calculation "begins with the multiplication of the number of hours reasonably expended by a reasonable hourly rate." *Hanlon*, 150 F.3d at 1029; *Lealao v. Beneficial California, Inc.,* 82 Cal.App.4th 19, 26 (2000). With respect to the hours worked, courts consider whether "in light of the circumstances, the time could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).

Generally, courts "defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Chaudhry v. City of L.A.*, 751 F.3d 1096, 1111 (9th Cir. 2014), cert. denied, 574 U.S. 876 (2014) (cleaned up); *Holt v. Kormann*, No. SACV 11-01047 DOC (MLGx), 2012 WL 5829864, *6 (C.D. Cal. 2012) (attorney's sworn testimony "is evidence of considerable weight" on the issue of the time required for particular task) (cleaned up).

Under California law, fee awards should generally be "fully compensatory." *Ketchum v. Moses*, 24 Cal.4th 1122, 1133 (2001). Thus, "absent circumstances rendering the award unjust, an attorney fee award should ordinarily include compensation for all the hours reasonably spent." *Id.*; *Serrano III*, 20 Cal.3d at 49.

An attorney's lodestar figure is "presumptively reasonable." *Cunningham v. Cnty. of Los Angeles*, 879 F.2d 481, 488 (9th Cir.1988); *In re Bluetooth*, 654 F.3d at 941. However, submitted lodestar hours should reflect the exercise of "billing judgment" to address "any excessive, redundant, or unnecessary hours." *Fair Housing of Marin v. Combs*, 285 F.3d 899, 908 (9th Cir. 2002).

Courts can adjust lodestar fees "upward or downward" to ensure a reasonable fee award, in consideration of factors such as the "quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *In re Bluetooth*, 654 F.3d at 941-942.

Here, Class Counsel have submitted Declarations[2] (and a Lodestar Summary spreadsheet) attesting to nearly eight hundred hours (787) worked on this case which amount to total lodestar fees of $705,053.[3] The submitted Declarations and Lodestar Summary detail the work performed and specific tasks undertaken in the successful prosecution of this case.

Class Counsel have exercised billing judgment by eliminating duplicative and other time deemed unnecessary to the resolution of this case, reducing their lodestar which was estimated at approximately $875,000 at preliminary approval. ECF 34-2 (Umpierre Decl.), ¶ 79; ECF 34-14 (Stebner Decl.), ¶¶ 20-21; ECF 34-13 (Wallace Decl.), ¶¶ 14-16; ECF 34-11 (Marks Decl.), ¶¶ 23-24. In addition, Class Counsel have elected to use 2023 rates instead of current rates.

The Court finds the lodestar hours and fees submitted by Class Counsel are reasonable and appropriate given the work performed and results achieved in the case.

### B. Class Counsel's Hourly Rates

The second step is determining the reasonable market value of the attorneys' services at an hourly rate. *Ketchum,* 24 Cal.4th at 1134; *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 979 (9th Cir. 2008).

Under the lodestar analysis, the hourly rates used in a fee request must be "reasonable" given the "experience, skill and reputation of the attorney requesting fees." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). The requested rates must be "in line with those prevailing in the community for similar services by lawyers of reasonable comparable skill, experience and reputation." *Camacho*, 523 F.3d at 980. Generally, the "forum district represents the relevant

---

[2] Declarations have been submitted by Class Counsel Brian Umpierre, Kathryn Stebner, Guy Wallace, and David Marks. ECF 34-2, 34-11, 34-13, and 34-14.

[3] The lodestar amount includes a conservative estimate of approximately 100 hours for anticipated future work and, specifically, monitoring Watermark's compliance with the Injunction. ECF 34-2 (Umpierre Declaration), ¶ 86.

legal community." *Sarabia v. Ricoh USA Inc*, Case No. 8:20-cv-00218-JLS-KES, 2023 WL 3432160, *7 (C.D. Cal. May 1, 2023).

Multiple courts have found the "annual Real Rate Report" to be a "useful guidepost" for assessing reasonable rates in the Central District. *See Hicks v. Toys "R' Us-Delaware, Inc.,* Case Nos. CV13-1302-DSF (JCGx), EDCV 13-01159 DSF (JCGx), 2014 WL 4670896, at *1. *See also Sarabia,* 2023 WL 3432160, at *8 (collecting cases). Here, the hourly rates charged by Class Counsel are within the Third Quartile rates set forth in the 2023 Real Rate Report (2023 Report). Compare ECF 34-2 (Umpierre Decl.), Ex. D (Class Counsel Lodestar Spreadsheet, Summary Tab, listing hourly rates); Umpierre Decl., Ex. E (2023 Real Rate Report), pp. 16, 25, 29-30.

The Third Quartile rates in the Real Rate Report are the appropriate guideline here. Class Counsel have literally decades of experience successfully prosecuting class actions involving understaffing claims asserted against assisted living and skilled nursing facilities. ECF 34-14 (Stebner Decl.), ¶¶ 3-6; ECF 34-13 (Wallace Decl.), ¶¶ 3-4; ECF 34-11 (Marks Decl.), ¶¶ 3-7. Multiple courts have approved hourly rates for many of Class Counsel, at levels commensurate with the rates requested here. ECF 34-2 (Umpierre Decl.), ¶ 92, Exs. G, H.

Further, Class Counsel could have applied current hourly rates to prior time entries. *Stetson v. Grissom,* 821 F.3d 1157, 1166 (9th Cir. 2016) (to compensate for delayed payment, lodestar should be calculated using "the prevailing rate as of the date of the fee request" or by "using historical rates and compensating for delays with a prime-rate enhancement"). Here, Class Counsel charged the same 2023 rate for all hours worked. ECF 34-2 (Umpierre Decl.), ¶¶ 87-93.

The Court finds the hourly rates requested by Class Counsel to be reasonable and in line with the market rates charged by skilled counsel in the Central District in similar complex civil litigation.

**C.     Benefits Provided to the Settlement Class**

1    The key consideration in any fee request is whether the "value provided to
2    the class, including the value of nonmonetary relief" justifies the fee award.
3    *Lowery*, 75 F.4th at 993; *In re Bluetooth*, 654 F.3d at 943-45.
4         Here, the $3.5 million monetary payment represents nearly 20% of the likely
5    trial recovery and exceeds the average cash payments obtained in most comparable
6    settlements. ECF 34-2 (Umpierre Decl.), ¶¶ 60, 67-69. Further, the Staffing,
7    Training, Monitoring, and Disclosure provisions in the Injunction result in added
8    benefits for current Watermark residents (Class Members and non-Class Members
9    alike) who reside in the Watermark Injunction facilities during the Injunction term.
10   Even if not easily monetizable, the Injunction's provisions provide societal benefits
11   properly considered in determining an appropriate fee award here. *In re Ferrero*,
12   583 Fed.Appx. at 668 ("meaningful" injunction that is "consistent with the relief"
13   sought in the lawsuit supports approval of fee award); *Lowery,* 75 F.4th at 992,
14   n.1.

### D. Percentage-of-Recovery Cross Check

The fee request of $705,053 represents 20% of the $3.5 million in monetary value provided to the Settlement Class. ECF 34-2 (Umpierre Decl.), ¶ 86. That falls well within the range approved in other cases. *In re Ferrero*, 583 Fed.Appx. at 668 (approving fee award of $985,920 where settlement benefits are $550,000 cash plus (non-monetized) injunctive relief requiring changes to product labels and advertising); *Andrade-Heymsfield v. Nextfoods, Inc.,* No. 3:21-cv-01446-BTM-MSB, 2024 WL 3871634, *7 (S.D. Cal. Apr. 8, 2024) ("some [percentage of recovery] awards go up to 50%"); *Cicero v. DirectTV, Inc.,* No. EDCV 07-1182, 2010 WL 2991486, at **6-7 (C.D. Cal. July 27, 2010) (survey of class action "suggests that 50% is the upper limit, with 30-50% commonly awarded in cases in which the common fund is relatively small").

Under *Lowery*, if the requested fee "exceeds 25% of the benefit to the class," a "hard and probing look" is warranted to ensure the award is reasonable.

*Lowery*, 75 F.4th at 994. Even though Plaintiffs do not seek fees in an amount greater than the 25% benchmark, the instant fee request passes muster under any level of scrutiny. Class Counsel's lodestar support is solid and reflects careful application of "billing judgment" to eliminate any excessive time. The hourly rates charged fall squarely within market (as confirmed by the Real Rate Report and other sources) and do not include a "delayed payment" adjustment. Further, Plaintiffs' fee request is reasonable after consideration of the results achieved, risk of litigation, skill required and quality of work, litigation burdens, and whether settlement produced non-cash benefits, such as injunctive relief. *Vizcaino*, 290 F.3d at 1048–50; *Sarabia*, 2023 WL 3432160, at *5.

With respect to "results achieved," the key question is the value provided to the class in terms of cash and nonmonetary relief. *Lowery*, 75 F.4th at 993; *In re Bluetooth,* 654 F.3d at 943-45. Here, the $3.5 million cash is consistent with the monetary benefits in comparable settlements, (Umpierre Decl., ¶¶ 62-69), without considering the benefit to all residents, Settlement Class Members included, by virtue of the staffing, training, monitoring, and disclosure requirements set forth in the Injunction.

With respect to the risk factor, the case presented multiple challenges. For example, Plaintiff faced a risk showing classwide damages, particularly given Watermark's potential offset defense and other potential evidentiary complexities. As to class certification, Plaintiff believes his economic loss claims were suitable for class treatment, but not all jurists have agreed. Compare *Heredia v. Sunrise Senior Living, LLC,* Case No. 8:18-cv-01974-JLS-JDE, 2021 WL 6104188 (C.D. Cal. Nov. 16, 2021), affirmed 2023 WL 4930840 (9th Cir. 2023) with *Stiner v. Brookdale Senior Living, Inc.,* 665 F.Supp.3d 1150, 1208-1210 (N.D. Cal. 2023).

The successful prosecution of this case required skillful lawyering, particularly given Watermark's resources and choice of defense counsel.

Watermark was represented by Jones Day, one of the most prestigious law firms in the country. *In re American Apparel, Inc. S'holder Litig.,* No. CV 10–06352 MMM (JCGx), 2014 WL 10212865, at *22 (C.D. Cal. Jul. 28, 2014) (court considers "quality of opposing counsel as a measure of the skill required to litigate the case successfully").

With respect to "non-cash" considerations, both Settlement Class Members and Non-Class residents will benefit from the Injunction provisions bolstering facility staffing, as they rely on the same pool of care providers. *See* ECF 28-4 (Flores Decl.), ¶ 13, 16. Further, the general consuming public will benefit from improved disclosures in Watermark's resident admission contract with respect to how resident assessments impact facility staffing levels. Injunction, ¶¶ 1-4. The "meaningful" injunctive relief resulting in a "considerable benefit to society" supports Plaintiffs' requested fee. *See Lowery,* 75 F.4th at 994-995; *In re Ferrero,* 583 Fed.Appx. at 668.

### E.  Additional Considerations

Class Counsel's fee request also accords with the legislative intent under the CLRA and Elder Financial Abuse statutes to encourage meritorious lawsuits through the mandatory fee-shifting provisions. *In re Cobra Sexual Energy Sales,* 2021 WL 45355790, *18 (CLRA fee shifting designed to "incentivize counsel" to protect consumers through "publicly beneficial litigation"); *Delaney v. Baker,* 20 Cal.4th 23, 33 (1999) (fee provision in elder abuse statute enacted to encourage "attorneys to take up the cause").

Accordingly, the Court GRANTS Plaintiffs' Motion for attorneys' fees in the amount of $705,053.

## II.  REIMBURSEMENT OF LITIGATION EXPENSES

Class Counsel are entitled to reimbursement of reasonable out-of-pocket costs and expenses advanced in investigating, prosecuting, and settling this case. Fed. R. Civ. Pro. 23(h); *Harris v. Marhoefer,* 24 F.3d 16, 19 (9th Cir. 1994) (approving

reimbursement of reasonable expenses that would "normally be charged to a fee paying client"); *Staton v. Boeing Co.,* 327 F.3d 938, 974 (9th Cir. 2003). The California Consumers Legal Remedies Act and the California financial elder abuse statute provide for reimbursement of costs incurred. Cal. Civil Code §§ 1750 *et seq.*, 1780(e); Cal. W&I Code § 15657.5.

Here, Class Counsel request reimbursement of $29,522.91 in litigation costs and expenses. Upon review of Class Counsel's supporting Declarations, the requested costs and expenses were reasonably necessary for the prosecution of the lawsuit such that the Court finds the requested expenses are reasonable and should be reimbursed.

Accordingly, the Court GRANTS Plaintiffs' Motion for reimbursement of reasonable litigation expenses and costs in the amount of $29,523.

### III.     SERVICE AWARD FOR THE NAMED PLAINTIFF

The Named Plaintiff, Joseph DeCarlo, seeks a service award of $5,000. The request is consistent with the amount provided for in the Settlement Stipulation. ¶ 9.4; ECF 28-3 (DeCarlo Decl.), ¶ 31.

The requested service award is warranted given the "strong commitment" to the Class shown here by Mr. DeCarlo. *Garner v. State Farm Mut. Auto. Ins. Co.,* No. CV 08 1365 CW (EMC), 2010 WL 1687832, *17 & n.8 (N.D. Cal. Apr. 22, 2010). Specifically, Mr. DeCarlo devoted considerable time and effort throughout his service (over two years) in this litigation. Mr. DeCarlo and his son participated in numerous conferences with Class Counsel on case investigation, development, and status, and settlement related matters.

The requested amount is modest, and well within the range approved by other courts within the Ninth Circuit. *See, e.g., Chen v. Western Digital Corp.,* No. 8:19-cv-00909-JLS-DFM, 2021 WL 9720778, *18 (C.D. Cal. Jan. 5, 2021) (granting $18,000 service award); *Singer v. Becton Dickinson & Co.,* No. 08-CV-821-IEG (BLM), 2009 WL 4809646, at *6 (S.D. Cal. Dec. 9, 2009) (approving $25,000

service award); *Garner,* 2010 WL 1687832, at *17 (approving $20,000 service award).

Accordingly, the Court grants Mr. DeCarlo a service award in the amount of $5,000.

**IT IS SO ORDERED.**

Dated: July 23, 2025

　　　　　　　　　　　　　　　　　　　　　　
Dale S. Fischer
United States District Judge